Scott E. Ortiz, WSB #5-25-20
Erica R. Day WSB #7-5261
Williams, Porter, Day & Neville, P.C.
159 North Wolcott, Suite 400 (82601)
P. O. Box 10700
Casper, WY 82602
307-265-0700 telephone
307-266-2306 facsimile
sortiz@wpdn.net
eday@wpdn.net

*Attorneys for Defendant Corizon Health, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| FRANCISCO SANCHEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil No. 20-CV-109 |
| | ) |
| CORIZON HEALTH, INC. and its employees | ) |
| and agents; WYOMING DEPARTMENT OF | ) |
| CORRECTIONS and Director Robert Lampert; | ) |
| WYOMING MEDIUM CORRECTIONAL | ) |
| INSTITUTION AND Warden Michael Pacheco; | ) |
| WYOMING STATE PENITENTIARY and | ) |
| Warden Michael Harlow and JOHN DOES 1-10, | ) |
| true names unknown, | ) |
| | ) |
| Defendants. | ) |

## CORIZON HEALTH, INC.'S MEMORANDUM IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, Defendant Corizon Health, Inc. (hereinafter "Corizon"), by and through

its undersigned counsel of record, Scott E. Ortiz and Erica R. Day of Williams, Porter, Day &

Neville, P.C., and respectfully submits the following Memorandum in Support of the Motion for

Summary Judgment.  In support of its motion, Corizon states as follows:

## I.    INTRODUCTION.

This action arises from medical treatment provided to Plaintiff while incarcerated at the Wyoming State Penitentiary (hereinafter "WSP"), specifically from Plaintiff's claims that he suffers from Barrett's esophagus and an inguinal hernia.  Plaintiff alleges that the care provided by Corizon both breached the standard of care and constituted deliberate indifference to serious medical needs.

As an initial matter, Plaintiff's deliberate indifference claims must fail because he has not satisfied the Prison Litigation Reform Act's (hereinafter "PLRA") requirement of administrative exhaustion.  Although Plaintiff filed untimely grievances in May of 2021, more than a year after this suit was commenced, the PLRA requires compliance *prior* to filing suit and the Tenth Circuit has previously confirmed that exhaustion of administrative remedies undertaken after suit has been filed is insufficient.  Next, Plaintiff's deliberate indifference claims must fail because Plaintiff cannot provide any evidence that his requested treatment, a monitoring endoscopy and surgical repair of his hernia, was denied pursuant to a policy or practice of denying off-site treatment to save on costs.

Further, Plaintiff's claims for medical malpractice must also fail because Plaintiff does not suffer from Barrett's esophagus, as confirmed by Plaintiff's most recent endoscopy, completed in July of this year, or an inguinal hernia requiring surgical repair.  Moreover, Plaintiff's allegations that Corizon breached the standard of care and was deliberately indifferent in refusing to provide Plaintiff with over-the-counter proton pump inhibitors and a bland diet are unsupported by Plaintiff's own expert witness.

For these reasons, and as there are no genuine disputes of material fact remaining, Corizon is entitled to entry of judgment in its favor on Plaintiff's deliberate indifference and medical malpractice claims.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS.

### A.   PLAINTIFF'S BARRETT'S ESOPHAGUS CLAIMS.

Plaintiff is a 41 year old male currently incarcerated at the Wyoming State Penitentiary serving a life sentence. *See* Transcript of the Deposition of Francisco Sanchez, p. 3, 5, attached as "Exhibit 1." Plaintiff asserts that in 2008 he was diagnosed with Barrett's esophagus which is a condition caused by long-term changes in the esophagus. *See* Complaint [ECF 1], ¶¶ 19-20. However, as acknowledged by Plaintiff's expert, diagnoses of Barrett's esophagus requires confirmation of cellular changes by pathology. *See* Transcript of the Deposition of Gary Schmitz, MD, p. 24:22 – 25:4; 25:14-16, attached as "Exhibit 2." Plaintiff contends that Corizon, the company contracted to provide medical services by the Wyoming Department of Corrections (hereinafter "WDOC"), failed to provide adequate treatment of this condition.

In 2008, Plaintiff was referred off-site to Dr. PV Sridharan, a general surgeon, for an endoscopy after complaining that his heartburn was not controlled on a proton pump inhibitor. *See* March 25, 2008 Record, attached as "Exhibit 3." After the endoscopy, Dr. Sridharan listed Plaintiff's postoperative diagnoses as GERD (gastroesophageal reflux disease), "[p]robable Barrett's esophagitis," and mild gastritis. *See* Memorial Hospital of Carbon County-Operative Report, attached as "Exhibit 4." The pathology results also did not support a diagnosis of Barrett's esophagus. *See* March 26, 2008 Pathology Reports, attached as "Exhibit 5." Instead, the pathology reports established Plaintiff suffered from "mild chronic gastritis," and that his biopsies were without diagnostic abnormality. *Id.*

Even though Plaintiff's biopsies and pathology reports did not reveal any diagnostic abnormalities, Corizon sent Plaintiff for another monitoring endoscopy in 2010 with Dr. Sridharan. *See* November 11, 2010 Memorial Hospital of Carbon County - Operative Report, attached as "Exhibit 6." Although Dr. Sridharan believed he saw 'visual evidence' of Barrett's esophagus, the pathology report again establishes that Plaintiff did not have Barrett's esophagus. *Id.*; *see also* November 11, 2010 Ivinson Memorial Hospital-Pathology Report, attached as "Exhibit 7." Indeed, pathology reflected that Plaintiff suffered from "mild chronic gastritis." *Id.* Based on Dr. Sridharan's statement that Plaintiff suffered from Barrett's esophagus, even though unconfirmed by pathology, Corizon incorrectly noted Plaintiff's diagnosis as Barrett's esophagus in his file. *See* April 19, 2010 Chronic Care Notes, attached as "Exhibit 8."

In 2014, Plaintiff was seen by Dr. Susanne Levene, a general surgeon, employed by Corizon. *See* June 9, 2014 Encounter Notes, attached as "Exhibit 9." Dr. Levene is a trained general surgeon and was aware that Barrett's esophagus cannot be diagnosed without confirmation from pathology. *See* Affidavit of Susanne Levenne, MD, attached as "Exhibit 10." Dr. Levene noted the diagnosis of 'Barrett's esophagus' and requested to review Plaintiff's pathology reports. *Id*; *see also* Ex. 9. Plaintiff's expert agrees that Barrett's esophagus can only be diagnosed through pathology. *See* Ex. 2, p. 24:22 – 25:4; 25:14-16. Dr. Levene reviewed the pathology reports, confirmed there was no evidence of Barrett's esophagus, as shown by the pathology records that revealed mild chronic gastritis, and informed Plaintiff that he did not actually have Barrett's esophagus. Ex. 9; *see also* December 11, 2014 Encounter Record, attached as "Exhibit 11." Rather than being relieved, Plaintiff asserts that Dr. Levene ignored and/or changed his diagnosis. Moreover, as Plaintiff did not have Barrett's esophagus, Dr. Levene determined a third repeat

endoscopy was not necessary, which was consistent with expert treatises on the issue.  Ex. 10, Attachment One and Two.

Plaintiff is further critical of Dr. Levene's decision to stop prescribing over-the-counter proton pump inhibitors to Plaintiff free of charge, and to instruct him to purchase his own over-the-counter medications from the commissary.  Ex. 11.  Plaintiff contends that because he is a ward of the state, he is entitled to receive over-the-counter medications for free, regardless of whether he has the ability to pay for such medications.  Ex. 1. p. 20:24 – 21:1.  Omeprazole, a proton pump inhibitor is sold for $7.49, with no mark-up, by the commissary.  *See* Commissary Price List, attached as "Exhibit 12."  Plaintiff has presented no evidence that he was designated by the WDOC as indigent, and his financial records reveal that he has always had sufficient funds in his account to purchase over-the-counter medications.  *See* Sanchez Inmate Account Summary, attached as "Exhibit 13."   Indeed, even when Plaintiff did not have a job with the WDOC, he received a minimum of $30.00 per month from the WDOC to spend however he chose at the commissary for being on the list to be assigned a job.  Ex. 1, p. 13:22 – 14:2.  Plaintiff alleges that he should not have had to spend his stipend funds from the WDOC on over-the-counter medications, but has not alleged he was unable to purchase his medications himself for any reason.  Ex. 1, p. 20:24 - 21:1.  Plaintiff's expert, Dr. Schmitz, has stated that he will not offer an opinion that Corizon breached the standard of care by not providing over-the-counter proton pump stipend inhibitors.  Ex. 2, p. 33:8-12.

Plaintiff is further critical that after 2014 he did not receive a bland diet.  He was informed that "[a] bland diet is no longer being offered per WDOC dietary and nutritional services all inmates receive a 'healthy heart' tray."  *See* February 18, 2015 HSR, attached as "Exhibit 14."  Plaintiff was further informed he could meet with the WDOC's on-staff dietician to discuss his

diet concerns.  *See* February 24, 2015 HSR, attached as "Exhibit 15."  Plaintiff also had the option to purchase foods from the commissary at his own convenience to supplement his diet.  Ex. 1, p.19:18-20.  Plaintiff took advantage of this opportunity, but often purchased foods that medical staff warned were considered 'trigger foods,' and which he should avoid.  *See* August 22, 2015 HSR, attached as "Exhibit 16; January 30, 2018 Encounter (stating "Patient's commissary list reviewed for the past 90 days; shows multiple purchases of common trigger foods for acid reflux including caffeine, spicy foods, and chocolate"), attached as "Exhibit 17."  Plaintiff's own expert stated he was not concerned with reports that Plaintiff was not avoiding trigger foods, and would not offer any opinions that Corizon breached the standard of care by not providing Plaintiff with a bland diet after 2014.  Ex. 2, p. 17:18-21; 19-20.

Plaintiff's expert further acknowledges that Plaintiff did not show 'alarm symptoms.'  *Id*. at p. 29:23-25.  Nonetheless, Plaintiff was sent for a third endoscopy and an examination of his hernia complaints with Dr. John Lumb, a general surgeon with Memorial Hospital of Carbon County, on July 19, 2021.  *See* July 19, 2021 Encounter, attached as "Exhibit 18."[1]   After examining Plaintiff, Dr. Lumb noted that Plaintiff reported a "possible history of Barrett's esophagus," but during the endoscopy found only "[m]lid distal esophagitis."  *Id*.  The pathology report reflects that Plaintiff suffers from "reactive gastropathy," and "mild chronic inflammation," and changes compatible with GERD.  *See* Summit Pathology Report, attached hereto as "Exhibit 19."  Neither the endoscopy nor pathology reflect that Plaintiff suffers from Barrett's esophagus. *Id*.

---

[1] At this date, only a 'pre-authenticated' copy of Plaintiff's records from the July 19, 2021 appointment is available.  Corizon will supplement this exhibit as soon as an 'authenticated' copy is provided by Memorial Hospital of Carbon County.

B. PLAINTIFF'S HERNIA CLAIMS.

On April 9, 2016, Plaintiff submitted a HSR stating he was experiencing pain his abdomen and testicle and requested to be examined. *See* April 10, 2016 Encounter, attached as "Exhibit 20." Plaintiff was seen the next day on April 10, 2016 by Gulshan Grewal, a registered nurse employed by Corizon, who, with a chaperone present, conducted an examination and reported there was no swelling in the scrotum, nor bulging in the groin. *Id*. The nurse noted that Plaintiff reported the pain had become better after two days of not exercising and recommended that he apply an ice pack for muscular pain relief and that he would be placed on gym restriction for 30 days. *Id*. Plaintiff was also seen a few days later by Mary Webber, another Corizon nurse, after reporting that while the pain was better he was experiencing a burning sensation. *See* April 13, 2016 Encounter, attached as "Exhibit 21." Nurse Webber confirmed that he should remain on a gym restriction and advised him to take ibuprofen or Tylenol from the canteen as needed. *Id*.

Plaintiff was seen again on May 18, 2016, after expiration of the 30 day gym restriction, by Dr. Robert White, an internist employed by Corizon in 2016. *See* May 18, 2016 Encounter, attached as "Exhibit 22." Plaintiff reported to Dr. White that he still felt pain, but requested that Dr. White lift the gym restriction. *Id*. Dr. White examined Plaintiff and believed that he saw a "small 1cm direct hernia…that is easily reducible." *Id*. Because of the size, Dr. White recommended that he stay on gym restriction to allow "time to heal," and offered a hernia belt. *Id*.

On September 6, 2016, Plaintiff was again seen by Dr. White because he reported that the veins on his penis were becoming distended as a result of the hernia. *See* September 6, 2016 Encounter, attached as "Exhibit 23." However, after an examination Dr. White reported that Plaintiff's veins appeared normal, and that the alleged hernia was "not a[s] recognizable on physical exam as it was last time." *Id*. As part of that appointment, Dr. White discussed with

Plaintiff "hernia repairs and successes, reality vs. expectation of surgery and outcomes." *Id*.  Dr. White further instructed Plaintiff to report if he felt the hernia became non-reducible.  *Id*.

Plaintiff did not submit any HSRs or communication forms to medical regarding his hernia for the next nineteen months.  In April of 2018, Plaintiff reported to nursing staff that his hernia was bothering him, but would not allow the medical staff to examine him.  *See* April 16, 2018 Encounter, attached as "Exhibit 24."  On April 18, 2018, Plaintiff was seen by Nurse Practitioner Erin Holcomb who noted that Plaintiff "reports the size seems to be the same," and that no intervention was necessary.  *See* April 18, 2018 Encounter, attached as "Exhibit 25."

In January of 2020, Plaintiff was transferred from the WSP to a facility in Tallahatchie County, Mississippi.  *See* Inmate/Resident Health Appraisal, attached hereto as "Exhibit 26."  As part of the Inmate/Resident Health Appraisal, Plaintiff reported that he had "[n]o complaints at this time."  *Id*.  He also described his medical history, stating that he suffered from: "GERD, HX of varicella, [and] Reports having a EGD and having barretts disease."  *Id*.  Plaintiff did not report suffering from a hernia nor that he was currently experiencing pain from a hernia.  *Id*. Plaintiff was seen again in April at the Tallahatchie facility by a Nurse Practitioner, and still did not report a hernia or request treatment.  *See* April 20, 2020 Encounter, attached as "Exhibit 27."

Even after being transferred back to the WSP in June of 2020, during his intake examination with a medical provider, Plaintiff did not reference a hernia.  *See* June 6, 2020 Transfer (Corizon 935-36), attached as "Exhibit 28."  However, on February 25, 2021, Plaintiff submitted an HSR asking that Corizon send him to his retained expert, Dr. Schmitz, a board certified surgeon, for repair of a symptomatic inguinal hernia and an endoscopy.  *See* February 25, 2021 HSR, attached as "Exhibit 29."  As a result, Plaintiff was seen by Dr. Susanne Levene, a board-certified general surgeon employed by Corizon, on March 2, 2021 to assess his request for

off-site treatment. *See* March 2, 2021 Encounter, attached as "Exhibit 30." Plaintiff reported that he believed he had a hernia on his right side; however, "[h]e has not seen a bulge but he feels a burning in the right groin when he participates in strenuous activity." *Id*. After examination, Dr. Levene noted "[n]o evidence of inguinal hernia right or left sided on today's exam." *Id*.

Plaintiff acknowledges that he has not seen a bulge in his groin, but asserts that Dr. Levene 'missed' his hernia during examination. Ex. 1, p. 22:9-19. As a result, Dr. Levene performed a second examination on May 4, 2021. *See* May 4, 2021 Encounter, attached as "Exhibit 30." Again, Dr. Levene found no evidence of an inguinal hernia. *Id*.

On July 19, 2021, Plaintiff was seen by outside general surgeon Dr. John Lumb of Memorial Hospital of Carbon County. Ex. 18. After examination, Dr. Lumb could not palpate a hernia on examination. *Id*. Plaintiff's expert, Dr. Gary Schmitz, agrees that if an inguinal hernia cannot be palpated, he would not recommend surgery. Ex. 2, p. 52:6-10.

## C. THE GRIEVANCE PROCESS.

Pursuant to Wyoming Department of Corrections' Policy No. 3.100 inmates who wish to grieve any condition of their confinement must prepare a grievance that "include[s] a simple and straightforward summary of the incident or occurrence giving rise to the grievance or reason for the grievance and a requested grievance resolution or remedy." *See* WDOC Policy No. 3.100, attached as "Exhibit 31." Policy No. 3.100 further states that "[a]n inmate grievance may request review of only one (1) staff members actions/decisions on a single grievance form." *Id*. at (E)(viii).

On May 28, 2021, Plaintiff filed two Form 321 initial grievances asserting that Corizon failed to appropriately diagnose and treat his Barrett's esophagus, and arrange for a follow-up endoscopy for Barrett's esophagus, and to diagnose and treat, including surgically repair, his right inguinal hernia. *See* May 28, 2021 Form 321, attached hereto as "Exhibit 32." The grievance

manager responded, and noted that after an examination Dr. Levene was unable to find evidence of a hernia and that Dr. Levene had requested an endoscopy be provided on June 1, 2021.  *See* June 4, 2021 Grievance Responses, attached as Exhibit 33."  Plaintiff completed the next step of the grievance process by appealing to the Warden.  *See* Initial Grievance Appeal, attached hereto as "Exhibit 34."  The Warden upheld the grievance responses.  *See* July 9, 2019 Letter from the Warden, attached hereto as "Exhibit 35."  Plaintiff has not provided any evidence he completed the next step of the grievance process, which would be filing an appeal to the Director of the WDOC.  *See* Ex. 31.  Prior to filing grievances in May of 2021, Plaintiff had not filed any grievances which reached an appeal to the Director.  *See* Public Records Request, p. 2, attached as "Exhibit 36."

## III.   STANDARD OF REVIEW.

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The court must examine all evidence in the light most favorable to the non-moving party.  *Moya v. U.S.*, 35 F.3d 501, 503 (10th Cir. 1994).  However, even when drawing all inferences in the light most favorable to the non-moving party, that party "must identify sufficient evidence which would require submission of the case to a jury."  *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992).  A fact is material when it might affect the outcome of the dispute.  *See Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995).  The moving party may establish the nonexistence of any genuine dispute as to material facts by offering evidence that negates an essential element of the nonmoving party's claim or demonstrating the nonmoving party cannot establish an essential element.  FED. R. CIV. P. 56(c)(1)(A) (B); *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013).

Parties cannot rely upon allegations or denials, but must set forth specific facts supporting their positions. *Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009). "It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995). "[E]vidence, including testimony, must be based on more than mere speculation, conjecture or surmise." *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). Unsubstantiated conclusory allegations carry no probative weight in summary judgment proceedings and do not create a genuine issue of fact. *Phillips v. Calhoun,* 956 F.2d 949, 951 n.3 (10th Cir. 1992).

This Court has been clear that "summary judgment is not a 'disfavored procedural shortcut' to the contrary; it is an important procedure 'designed to secure the just, speedy and inexpensive determination of every action." *Robert L. Kroenlien Tr. ex rel. Alden v. Kirchhefer*, 2013 WL 1337385, at \*1 (D. Wyo. Mar. 31, 2013) aff'd 764 F.3d 1268 (10th Cir. 2014).

## IV.   ARGUMENT.

### A.   PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIMS ARE BARRED BY HIS FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

Pursuant to the Prison Litigation Reform Act "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C § 1997e(a). The Prison Litigation Reform Act's exhaustion requirement is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to serve two main purposes. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "The first purpose is to protect agency authority, both by giving the agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Jennings v. Dowling*, 642 F. App'x 908, 912-913 (10th Cir. 2016)

(quoting *Woodford*, 548 U.S. at 89).  The second purpose is to "promote efficiency by permitting claims, where possible, to be settled at an administrative level; and even where this is not possible, to develop a 'useful record for subsequent judicial consideration.'"  *Id*.

The Tenth Circuit has recognized that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system," but "it is the prison's requirements…that define the boundaries of proper exhaustion."  *Jennings*, 642 F. App'x at 913 (*quoting Jones*, 549 U.S. at 218).  Courts have also found that administrative remedies were not sufficiently exhausted under the PRLA where the inmate did not include the specific requested remedy in the grievance.  *See Cordova v. Dowling,* 534 F. App'x 751, 753 (10th Cir. 2013). Further, even "where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Moreover, filing a grievance after litigation has commenced does not satisfy the PLRA's exhaustion requirement.  The Tenth Circuit has clearly stated that "an inmate is not permitted to complete the administrative exhaustion process *after* he files suit."  *Snyder v. Harris*, 406 F. App'x 313, 316-17 (10th Cir. 2011) (emphasis in original); *see also Brewer v. Mullin*, 130 F. App'x 264, 265 (10th Cir. 2005) (stating the PLRA "requires timely and complete exhaustion of administrative remedies *prior* to filing a § 1983 claim concerning prison conditions") (emphasis supplied). In *Snyder*, the Tenth Circuit found that the plaintiff failed to exhaust his administrative remedies when he filed the third step of his grievance after suit had been commenced.  *Id*. (stating "Snyder filed this lawsuit on May 14, 2007, before the grievance officer received his step 3 grievance"); *see also Rigler v. Lampert*, 248 F. Supp. 3d 1224, 1235 (D. Wyo. 2017) (stating that "[n]either is

an inmate permitted to complete the administrative exhaustion process after he has filed his lawsuit").

Here, Plaintiff did not exhaust his administrative remedies prior to filing suit regarding his request to have a surgical hernia repair and for another endoscopy, provision of proton pump inhibitors free-of-charge, and a bland diet, and his deliberate indifference claims are therefore barred pursuant to the Prison Litigation Reform Act.  Even if Plaintiff's grievances were not untimely in that they were filed over a year after this lawsuit was commenced, Plaintiff further did not complete the grievance process.  To complete the WDOC grievance process, Plaintiff was required to file another appeal to the Director of the WDOC.  Ex. 31.  He has not produced evidence that he has done so.

As Plaintiff's grievances were filed after this suit was commenced, which the Tenth Circuit has already determined is insufficient to satisfy the PLRA's exhaustion of administrative remedies requirement, and Plaintiff did not complete his appeal to the Director of the WDOC, Plaintiff's claims are barred pursuant to the PLRA.

### B.  PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIMS MUST FAIL BECAUSE HE CANNOT ESTABLISH A POLICY OF PRACTICE OF DENYING CARE TO SAVE ON COSTS.

It is well-settled in the Tenth Circuit that to "succeed on a § 1983 claim brought against a corporate entity, the plaintiff must prove both that a corporate employee or agent violated the plaintiff's constitutional rights and that the violation was the result of a custom or policy of the corporation.  *Winter v. Mansfield*, 2020 WL 5253721, at *1-2 (D. Kan. Sept. 3, 2020); *Monell v. Dept. of Social Services of the City of New York*, 471 U.S. 808, 820 (1985)).  The mere "formulaic recitation," that a defendant acted according to a policy or custom which does not identify the precise custom is insufficient to state a Monell claim for deliberate indifference.  *Granato v. City & Cty. of Denver*, 2011 WL 3820730, at * 8 (D. Colo. Aug. 30, 2011).

The Tenth Circuit has determined the various types of official policies through which liability may be found pursuant to a § 1983 claim:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Crownson v. Washington Cty. Utah*, 983 F.3d 116, 1184 (10th Cir. 2020).  In the absence of an official policy or ratification by a final policy maker, "a municipality may still be liable for the widespread and persistent practice," which constitutes a custom.  *B.A.L. by & through Stephenson v. Laramie Cty. Sch. Dist. No. 1*, 2016 WL 10570871, at 4 (D. Wyo. Nov. 30, 2016).  "[A] custom is a practice that is so settled and permanent that it takes on the force of law."  *Brennan v. Headley*, 807 F. App'x 927, 937-38 (11th Cir. 2020) (*citing Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005)).  Moreover, "[d]emonstrating a policy or custom generally requires the plaintiff to show a persistent and wide-spread practice."  *Id*. (*quoting Goodman v. Kimbrough*, 718 F.3d 1235, 1335 (11th Cir. 2013)).  The plaintiff must also establish that the policy or practice was the "moving force behind the injury alleged."  *Phillips v. Sheridan Cty. Sheriff's Off.*, 2015 WL 13689047, at *5 (D. Wyo. May 4, 2015) (citations omitted).

Here, Plaintiff has not identified any underlying constitutional violation upon which to base a Monell claim.  Nor has Plaintiff identified a formal policy, the decision of an employee with final policy making authority, ratification by a policy making authority, or training as the cause of his alleged constitutional violation.  He must therefore present evidence that an employee of Corizon violated his constitutional rights, and the violation was the result of "an informal custom

amounting to a widespread practice," of denying off-site care to save on costs.  *B.A.L. by & through Stephenson*, 2016 WL 10570871, at 4.

However, as an initial matter, it is not sufficient to demonstrate that Corizon merely considered cost in providing treatment to Plaintiff.  Indeed, the Tenth Circuit has previously held that "prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment."  *Sherman v. Klenke*, 653 F.App'x 580, 592 (10th Cir. 2016) (*quoting Winslow v. Prison Health Services*, 406 Fed. Appx. 671, 674 (3d Cir. 2011)(unpublished)).  "[A]dministrative convenience and cost may be, in appropriate circumstances, permissible factors for correctional systems to consider in making treatment decisions…The Constitution is violated only when harm occurs because administrative convenience is considered to the exclusion of reasonable medical judgment."  *See Barrow v. Wexford Health Sources, Inc.*, 816 Fed. Appx. 1, 6 (7th Cir. 2020) (finding no evidence of a policy of denying off-site care to save costs where company policy allowed for 'collegiate review' of a medical provider's recommendation for off-site care by a non-medical provider, in addition to evidence of a company focus on cost minimization).  Moreover, this Court has already determined that a single plaintiff's "experiences alone cannot support a claim of a widespread custom or policy."  *See Ryan v. Corizon Health, Inc.*, Order on Defendant's Motion for Summary Judgment and Motion to Strike, Civil Action No. 20-CV-98 (D. Wyo. July 22, 2021).

Here, Plaintiff has not established that any alleged constitutional violation was the result of an unconstitutional policy or practice to delay or deny off-site care to avoid costs.  When asked during his deposition what evidence supported his claim that off-site care was denied to save on costs, Plaintiff was unable to identify any evidence in support of his claim.

> Q:      In your complaint, you've alleged that Corizon has a policy of denying offsite care to save money. What evidence do you have to support the existence of that policy?
>
> MR. BAILEY:      I'm going to object to the extent this may call for attorney-client privileged communications.  If he has an answer to it on his own, fine. Go ahead, Mr. Sanchez.
>
> THE DEPONENT:    No, sir. I agree totally.
>
> Q:      (BY MS. DAY)      You don't know of any information other than what you've discussed with your lawyer?
>
> A:      Yeah.
>
> MR. BAILEY:      Whoa, whoa, whoa, whoa, whoa, Mr. Sanchez. I'm going to assert another attorney-client privileged objection because the question sort of implies a communication with your attorney on the subject, so I'll object. But go ahead if you have independent knowledge.
>
> THE DEPONENT: No, sir. I agree.

Ex. 1, p. 50:4-21.  As Plaintiff cannot identify any evidence that Corizon has a policy or practice of denying off-site care to save on costs, Corizon is therefore entitled to judgment in its favor on Plaintiff's deliberate indifference claims.

### C. PLAINTIFF'S MEDICAL MALPRACTICE AND DELIBERATE INDIFFERENCE CLAIM FAILS BECAUSE HE DOES NOT HAVE AN INGUINAL HERNIA.

It is well-settled in Wyoming that "[a] medical malpractice plaintiff has the burden to prove "(1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered." *Nalder v. W. Park Hosp.*, 254 F.3d 1168, 1172 (10th Cir. 2001) (*quoting Sayer v. Williams*, 962 P.2d 165, 167-68 (Wyo. 1998)).  Further, "in all but the extraordinary medical malpractice case, the plaintiff has the burden of producing expert testimony to support a prima facie case of negligence….[and the] testimony of a qualified physician is essential to establish a reasonable probability that the physician's negligence caused the injury." *Sayer*, 962 P.2d 165, 167-68 (Wyo. 1998).  As it is

"virtually axiomatic that a plaintiff hoping to surmount summary judgment must present evidence indicating that it was the medical practitioner's departure from a recognized standard which was the proximate cause of the plaintiff's injury," Plaintiff's medical malpractice claim fails as a matter of law for failure to establish a breach of the standard of care and causation. *Crandall v. Weaver*, 2016 WL 10950456, at * 2 (D. Wyo. Nov. 16, 2016).

Here, Plaintiff's expert, Dr. Schmitz, opined that Plaintiff suffered from a symptomatic inguinal hernia for years, and that Corizon breached the standard of care by failing to schedule an elective outpatient surgical repair. *See* September 30, 2018 Record Review, attached as "Exhibit 37." However, Dr. Schmitz did not examine the Plaintiff, nor did he have a call with Plaintiff to discuss his symptoms. Ex. 2, p. 28:4-7. Dr. Schmitz also acknowledged that symptoms of an inguinal hernia could match symptoms of other conditions, including a 'sports hernia,' which is essentially a tear of the muscle. *Id*. at p. 44:23 – 45:17. Moreover, he acknowledges that in determining whether a patient's symptoms reflect a hernia, as compared to another ailment, physical examination is the most important to a diagnosis. *Id*. at p. 45:18-46:4. Further, Dr. Schmitz admitted that if a general surgeon could not palpate a hernia, he would not recommend surgical repair. *Id*. at p. 52:6-10.

Here, Plaintiff may seek to ignore the examinations of Dr. Levene, a general surgeon employed by Corizon, but he cannot ignore the findings of an independent off-site general surgeon. Ex. 18. Dr. John Lumb, a general surgeon with Memorial Hospital of Carbon County, examined Plaintiff and stated that he could not palpate a hernia. *Id*. As Plaintiff does not have a palpatable inguinal hernia, and his own expert confirms that surgical repair would be inappropriate if a hernia cannot be identified, Plaintiff's claims for deliberate indifference and medical malpractice arising from Corizon's alleged failure to surgically repair Plaintiff's inguinal hernia must fail because

Plaintiff cannot establish a breach of the standard of care, causation, or damages, and Corizon is therefore entitled to judgment as a matter of law.

### D. PLAINTIFF'S MEDICAL MALPRACTICE AND DELIBERATE INDIFFERENCE CLAIM FAILS BECAUSE HE DOES NOT HAVE BARRETT'S' ESOPHAGUS.

As set forth above, a medical malpractice plaintiff has the obligation to prove: "(1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered." *Nalder*, 254 F.3d at 1172 (10th Cir. 2001). Here, Plaintiff cannot prove any of the elements of a malpractice claim in regards to his assertion that he suffers from Barrett's esophagus, which required monitoring endoscopies, and that Corizon's treatment failed to satisfy the standard of care.

As an initial matter, Plaintiff's expert acknowledges that Plaintiff did not have Barrett's esophagus in 2008 or 2010. Ex. 2, pp. 24:22 – 25:4, 25:14-16. Nonetheless, Plaintiff's expert has opined that Plaintiff should have received continual endoscopic monitoring, even though the pathology reports show only mild gastritis and esophagitis. Ex. 5; 7. Moreover, the standard of care does not require repeated endoscopic monitoring when there are no changes indicative of Barrett's esophagus based on pathology findings. Ex. 10, Attachment One and Two. To the contrary, the Clinical Guidelines Committee of the American College of Physicians state that if an endoscopy is normal "further routine upper endoscopy is not indicated." *Id*. The American Society for Gastrointestinal Endoscopy also states "[i]f that first screening is negative for Barrett's tissue, there is no need to repeat it." *Id*. Corizon's treatment of Plaintiff more than satisfies these recommendations, as Corizon sent Plaintiff for an endoscopy in 2008 and for a follow up endoscopy in 2010 even though his 2008 pathology reports did not reveal concerning findings.

Further, Plaintiff cannot establish a breach of the standard of care, nor that such a breach was the legal cause of any injury. To the contrary, Plaintiff's most recent endoscopy results reflect

distal esophagitis – not Barrett's esophagus or pre-cancerous changes.  Ex. 18; 19.  Moreover,

Plaintiff's allegations that Corizon breached the standard of care by not providing over-the-counter

medications free of charge and a bland diet, are unsupported even by Plaintiff's own expert.  Ex.

2, p. 30:1-11, 33:8-12.  It is axiomatic in Wyoming that expert testimony in the field of medicine

at-issue is necessary to support a claim of medical malpractice.  *See Crandall*, 2016 WL 10950456.

Here, there is no expert testimony to the effect that the standard of care required Corizon provide

over-the-counter proton pump inhibitors free of charge, when Plaintiff was not indigent and had

funds available to use for the purchase and was receiving a monthly stipend from the WDOC.  Ex.

1, p. 13:22 – 14:2; 20:24 - 21:1; Ex. 13.

Other courts which have considered the issue in the context of deliberate care claims have

found that it is not unconstitutional to require inmates who have the ability to pay a small fee for

their care as an investment in their own health.  *See Reynolds v. Wagner*, 128 F.3d 166, 175 (3d

Cir. 1997) (stating that "[a]lthough it is possible that the fee-based program at issue here may cause

some prisoners to refrain from seeking medical treatment as early as they might otherwise do so,

the deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely

free from the cost considerations that figure in the medical-care decisions made by most non-

prisoners in our society"); *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989) (stating that an

inmate financial responsibility program "would appear to be reasonably related to a legitimate

penological interest in encouraging inmates to rehabilitate themselves by developing a sense of

financial responsibility").  Here, Plaintiff could have sought to be declared indigent or could have

used his own funds to purchase proton pump inhibitors from the commissary.  There is no evidence

that he was unable to purchase over-the-counter medications as he always had sufficient funds in

his account and his expert will not testify that the standard of care required he be provided over-

the-counter proton pump inhibitors.  Ex. 2, p. 33:8-12.

Similarly, there is no expert testimony to support Plaintiff's claim that the standard of care required he be provided a bland diet even when a bland diet was no longer on offer at the facilities where he was located.  Corizon notified Plaintiff in 2015 that bland diets were no longer being offered, but that he was receiving a heart healthy meal and could supplement his diet as desired by the commissary, which records reveal he did – even sometimes choosing GERD 'trigger' foods. Ex.16; 17.  No expert will testify that Corizon was required to provide a bland diet to satisfy the standard of care.

As Plaintiff cannot present any expert testimony to support his allegations that the standard of care required he be provided over-the-counter proton pump inhibitors free of charge and a bland diet, Corizon is entitled to summary judgment on Plaintiff's claim that Corizon breached the standard of care and committed medical malpractice or was deliberately indifferent, as a result. Similarly, there is no evidence to support Plaintiff's claim that the standard of care required Corizon to coordinate repeated endoscopies after the first two endoscopies in 2008 and 2010 did not reveal Barrett's esophagus.  However, Corizon has provided documentation that expert treatises at the time did not recommend follow-up endoscopies without a diagnosis of Barrett's esophagus. Ex. 10, Attachments One and Two.  As Corizon was following accepted guidelines in treating Plaintiff, Plaintiff's dispute is really "a disagree[ment] with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803. 811 (10th Cir. 1999) (*citing Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (stating disagreement with the type of prescription drugs he received to treat his HIV "does not give rise to a claim for deliberate indifference to serious medical needs").  "Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth

Amendment violation." *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (finding no constitutional violation where provider prescribed medications for headaches, even if not the type wished for by the plaintiff).

Moreover, to the extent that Plaintiff's claim is that the type of conservative care provided was inappropriate, he still cannot succeed on a deliberate indifference claim. Tenth Circuit case law is clear that "a disagree[ment] with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803. 811 (10th Cir. 1999) (*citing Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (stating disagreement with the type of prescription drugs he received to treat his HIV "does not give rise to a claim for deliberate indifference to serious medical needs"). "Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation." *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (finding no constitutional violation where provider prescribed medications for headaches, even if not the type wished for by the plaintiff).

Further, decisions such as "whether one course of treatment is preferable to another," are "classic examples for medical judgment …[and thus] beyond the [Eighth] Amendment's purview." *Clark v. Colorado Dep't of Corr.*, 2008 WL 4724126, at *9 (D. Colo. Oct. 24, 2008), as amended (Oct. 29, 2008). In accordance with this understanding, courts have consistently held that "[a] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)). Further, "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eight Amendment violation." *Payles v. Dahim*, 771 F.3d 402, 409 (7th Cir. 2014) (*citing Johnson v.*

*Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)).  Because of this, "federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment."  *Id*.; *see also Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (74th Cir. 2019) (stating that "medical professionals may choose from 'a range of acceptable courses based on prevailing standards in the field,'" and the court will grant those decisions deference in the absence of evidence no minimally competent professional would choose the treatment provided).

Further, Plaintiff's most recent endoscopy and pathology results show no evidence of Barrett's esophagus and establish that Plaintiff cannot satisfy the elements of a medical malpractice claim which require establishing the standard of care, breach, and causation in regards to his claim that he was improperly denied an endoscopy and suffered as a result.

### E.   THERE IS NO EVIDENCE TO SUPPORT PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES.

It is well recognized in Wyoming that "[p]unitive damages are not a favorite of the law and are to be allowed with caution within narrow limits."  *Sheridan Commercial Park, Inc. v. Briggs*, 848 P.2d 811, 818 (Wyo. 1993) (*quoting Weaver v. Mitchell*, 715 P.2d 1361, 1369-70 (Wyo. 1986).  This limitation on the award of punitive damages is because such damages are not intended to compensate the plaintiff, but instead "to publicly condemn some notorious action or inaction on the part of the defendant."  *Mayflower Rest. Co. v. Greigo*, 741 P.2d 1106, 1115 (Wyo. 1987).  For this reason, the imposition of punitive damages requires proof of "willful and wanton conduct," and is not appropriate in "circumstances involving inattention, inadvertence, thoughtlessness, mistake, or even gross negligence."  *Cramer v. Powder River Coal, LLC* 2009 WY 45, ¶ 17, 204 P.3d 974, 979 (Wyo. 2009).  Indeed, the "conduct must be 'outrageous' and utterly 'reckless' and

under circumstances where a reasonable person would know their outrageous conduct was 'highly likely' to injure someone. *Weaver*, 715 P.2d at 1369-70. Wyoming courts have further stated that willful and wanton misconduct also requires an element of outrage "similar to that usually found in crime." *Cramer*, 2014 P.3d at 979. Where this element of 'outrage' is missing, summary judgment in favor of the defendant is proper. *Bryant*, 728 P.2d at 1136.

This Court has previously acknowledged that success on a deliberate indifference claim "does not necessitate a finding of callous indifference warranting punitive damages." *Millward v. Bd. of Cty. Commrs of the Cty. of Teton, Wyoming*, 2018 WL 9371573, at *2 (D. Wyo. Oct. 19, 2018). When analyzing punitive damages under 42 U.S.C. § 1983, the Tenth Circuit has stated the standard is "well established ….[that] [p]unitive damages are available only for conduct which is 'shown to be <u>motivated by evil motive or intent</u>, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) (*quoting Smith v. Wade*, 461 U.S. 30, 56 (1983))(emphasis supplied).

Here, Plaintiff contends punitive damages are appropriate because Corizon allegedly refused to treat Plaintiff's symptomatic inguinal hernia and to send him for monitoring biopsies after a diagnosis of Barrett's esophagus in order to save on off-site costs. However, as set forth in detail above, Corizon's treatment of Plaintiff was medically reasonable. Moreover, there is no evidence that Corizon or any of its medical providers, acted with the requisite "callous indifference," to justify punitive damages. To the contrary, Dr. Levene has testified that her opinion that a third monitoring endoscopy was not warranted in 2014 was supported by medical literature and consistent with the standard of care. Ex. 10, Attachments One and Two. Moreover, Plaintiff's expert will not testify that Corizon breached the standard of care by not providing proton pump inhibitors nor a bland diet, let alone that such conduct was "'outrageous' and utterly

'reckless' and under circumstances where a reasonable person would know their outrageous conduct was 'highly likely' to injure someone." *Weaver*, 715 P.2d at 1369-70.  Finally, in regards to Plaintiff's claim that his inguinal hernia went untreated, the evidence reveals that Plaintiff was diagnosed with a minor inguinal hernia in 2016 by Dr. White.  Ex. 22.  However, Plaintiff did not notify the medical staff that he was experiencing pain as a result of the alleged inguinal hernia for over a year at a time and did not notify the medical staff at Tallahatchie County Correctional Facilty that he had a hernia nor that he believed he needed a surgical hernia repair.  Ex. 26; 27.  More importantly, when Plaintiff was seen by a board-certified general surgeon, Dr. Susanne Levene, she confirmed that she could not palpate a hernia.  Ex. 30.  This has further been confirmed by an outside general surgeon, Dr. Lumb, as well.

There is no evidence to establish that Corizon's treatment of Plaintiff was "outrageous" or "utterly reckless" and under circumstances where another provider "would know their outrageous conduct was 'highly likely' to injure someone."  *Weaver*, 715 P.2d at 1369-70.  As a result, Plaintiff's claim for punitive damages in regards to the treatment provided for his alleged inguinal hernia and Barrett's esophagus, must be dismissed.

*Remainder of Page Intentionally Left Blank*

## V.   CONCLUSION.

**WHEREFORE**, Defendant Corizon Health, Inc. respectfully requests the Court enter summary judgment in its favor.

**DATED** this 3rd day of August, 2020.

**Defendant Corizon Health, Inc.**

/s/ Erica R. Day
Scott E. Ortiz WSB #5-2520
Erica R. Day, WSB #7-5261
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400 (82601)
P. O. Box 10700
Casper, WY 82602
307-265-0700 telephone
307-266-2306 facsimile
sortiz@wpdn.net
eday@wpdn.net